1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   ANGEL CABRAL,                          Case No. 1:21-cv-00128-CDB (SS)

12              Plaintiff,
                                            ORDER GRANTING PLAINTIFF'S
13        v.                                MOTION FOR REMAND

14   COMMISSIONER OF SOCIAL                 (Doc. 17)
     SECURITY,[1]
15
                Defendant.
16

17        Plaintiff Angel Cabral ("Plaintiff") seeks judicial review of a final decision of the

18   Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

19   disability benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the Court

20   on the Administrative Record ("AR") and the parties' briefs, which were submitted without oral

21   argument.  (Docs. 12, 17, 20, 21).[2]  The Court finds and rules as follows.

22        ///

23

24        [1] On February 19, 2025, Lee Dudek was named Acting Commissioner of the Social Security
     Administration.   See  https://www.ssa.gov/news/press/releases/2025/#2025-02-19  (last  visited
25   February 20, 2025).  He therefore is substituted as the Defendant in this action.  See 42 U.S.C. §
     405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding
26   the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

27        [2] On February 24, 2021, after both parties consented to the jurisdiction of a magistrate judge
     for all further proceedings in this action, including trial and entry of judgment, the matter was
28   reassigned pursuant to 28 U.S.C. § 636(c)(1).  (Doc. 10).

1  **I.     BACKGROUND**

2       **A.     Administrative Proceedings and ALJ's Decision**

3       On March 19, 2019, Plaintiff applied for child's disability benefits and supplemental

4  security income, alleging disability commencing on March 1, 2018.  (Doc. 17 at 1); (Doc. 20 at 2);

5  (AR 24, 324, 326).  Plaintiff's claim was initially denied on July 17, 2019, and again upon

6  reconsideration on October 17, 2019.  (AR 267, 276, 282).  Plaintiff requested a hearing before an

7  Administrative Law Judge on October 24, 2019.  (AR 286).  The ALJ, Dennis Raterink ("ALJ"),

8  held a telephone hearing where Plaintiff and vocational expert Susian J. Rowe testified on May 29,

9  2020.  (AR 24, 164-199).  The ALJ issued an unfavorable decision on August 12, 2020, finding

10  Plaintiff was not disabled.  (AR 21-45).  The Appeals Council denied Plaintiff's request for review

11  on December 2, 2020, rendering the ALJ's decision as the final decision of the Commissioner.  (AR

12  2-8, 321-323); 42 U.S.C. § 405(h).  Plaintiff subsequently filed this action seeking judicial review

13  of the ALJ's decision.  (Doc. 1).

14       In the decision, the ALJ found that Plaintiff had not attained the age of 22 as of the alleged

15  onset date of March 1, 2018, for purposes of child's disability benefits.  (AR 27).  The ALJ

16  thereafter considered Plaintiff's claims using the five-step sequential evaluation required by C.F.R.

17  § 404.1520(a).  (AR 25).  At step one, the ALJ found that Plaintiff had not engaged in substantial

18  gainful activity since March 1, 2018, the alleged onset date.  (AR 27).  The ALJ found that Plaintiff

19  worked after the alleged disability onset date but this work did not rise to the level of substantial

20  gainful activity, which was considered monthly earnings greater than $1,180.00 in 2018.  The ALJ

21  found that Plaintiff earned approximately $61.00 in the second quarter of 2018 and $17.00 in the

22  third quarter of 2018, and the record indicated Plaintiff earned $203.50 from Community Services

23  and Employment Training after he was hired in October 2018.  (AR 27).

24       At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative

25  joint disease of the right knee; obesity; depression; and anxiety.  (AR 27).  The ALJ determined

26  that Plaintiff's medically determinable severe impairments significantly limit his ability to perform

27  basic work activities as required by SSR 85-28.  (AR 27).

28       At step three, the ALJ found that Plaintiff does not have an impairment or combination of

1  impairments that meets or medically equals the severity of one of the listed impairments in 20

2  C.F.R. Part 404, Subpart P, Appendix 1. (AR 27-30). The ALJ discussed the reasoning as to why

3  each impairment failed to meet the requirements of the listings. The ALJ found Plaintiff's

4  impairments failed to meet listing 1.02 (major dysfunction of a joint) because the record, consistent

5  with his findings, does not demonstrate gross anatomical deformity and chronic joint pain and

6  stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and

7  findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction

8  or ankylosis of the affected joints with: (A) involvement of one major peripheral weight-bearing

9  joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively; or (B) involvement of

10  one major peripheral joint in each upper extremity (i.e. shoulder, elbow, or wrist-hand), resulting

11  in the inability to perform fine and gross movements effectively. (AR 27).

12      The ALJ considered the impact of Plaintiff's obese state in determining whether the

13  impairments were of such severity as to meet or medically equal the relevant Listings. (AR 27-28).

14  However, aside from explaining the obesity guidelines, the ALJ did not render a determination as

15  to the impact of Plaintiff's obesity on any body system or mental functioning such that it would

16  medically equal a listing. (AR 28).

17      The ALJ found that the severity of Plaintiff's mental impairments, considered individually

18  and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. (AR

19  28). In making this finding, the ALJ considered whether the four broad functional areas of mental

20  functioning listed in the "paragraph B" criteria are satisfied. [3] The ALJ considered Plaintiff's

21  ───────────────────

22  [3] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

23  20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or

24  "extreme." (*Id*.). To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation

25  in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. (*Id*.). An "extreme" limitation is the inability to function

26  independently, appropriately, or effectively, and on a sustained basis. (*Id*.). A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a

27  sustained basis. (*Id*.). A "moderate" degree of mental limitation means that functioning in this area

28  independently, appropriately, effectively, and on a sustained basis is "fair." (*Id*.) And a "mild" degree of mental limitation means that functioning in this area independently, appropriately,

3

1    testimony, previous consultative evaluations, and medical history in evaluating the four areas of

2    functioning.  (AR 28-29).  As understanding, remembering or applying information, the ALJ found

3    that Plaintiff has a moderate limitation.  As to interacting with others, the ALJ found that Plaintiff

4    has a mild limitation.  As to concentrating, persisting or maintaining pace, the ALJ found that

5    Plaintiff has a moderate limitation.  (AR 29).  As to adapting or managing oneself, the ALJ found

6    that Plaintiff has experienced a mild limitation.  Because these mental impairments do not cause at

7    least two "marked" limitations or one "extreme" limitation, the ALJ determined that the "paragraph

8    B" criteria are not satisfied.

9        The ALJ further considered the "paragraph C" criteria[4] and found that the evidence fails to

10    establish the presence of the "paragraph C" criteria because the record did not indicate: (1) the

11    evidence of both medical treatment, mental health therapy, psychosocial support(s), or a highly

12    structured setting that was ongoing and that diminished the symptoms and signs of Plaintiff's

13    mental disorder; and (2) a minimal capacity to adapt to changes in his environment or to demands

14    that are not already part of his daily life.  (AR 30).  The ALJ found that despite evidence of some

15    treatment, there is no indication of any inpatient treatment, intensive case management, recent

16    emergency room visits or counseling, partial hospitalizations, or hospitalizations for his mental

17    impairments.  The ALJ found that Plaintiff reported he is able to attend to personal care tasks

18    independently, perform some household chores, drive, shop, engage in some hobbies, and manage

19    his finances.  (AR 30).

20        Prior to step four, the ALJ found that Plaintiff has the residual functioning capacity ("RFC")

21    to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except:

22        [Plaintiff] can stand and walk in combination for no more than two hours per day;
          can never climb ladders, ropes, and scaffolds; could do no more than occasional
23        climbing of ramps and stairs, balancing, stooping, kneeling, crouching, or crawling;

24    _____

      effectively, and on a sustained basis is "slightly limited."  (*Id.*); *see Carlos v. Comm'r of Soc. Sec.*,
25    No. 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

26        [4] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that
      diminishes the signs and symptoms of [Plaintiff's] mental disorder."  20 C.F.R. § Pt. 404, Subpt.
27    P, App. 1 § 12.04(C)(1).  "Paragraph C," subsection (2) requires that Plaintiff "have minimal
      capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of
28    [Plaintiff's] daily life."  (*Id.* at subsection (C)(2)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and could do no more than occasional work at unprotected heights or with moving mechanical parts. The claimant can understand and remember simple instructions; can maintain concentration, persistence, and pace sufficiently to carry out simple tasks on a sustained basis. He would require brief reminders to follow through on work assignment changes in the workplace.

(AR 30). In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted he followed the two-step process as set forth in the 20 C.F.R. 404.1529 and 416.929, and Social Security Ruling ("SSR") 16-3p and considered the medical opinion(s) and prior administrative medical finding(s) in accordance with 20 C.F.R. 404-1520c and 416.920c. First, the ALJ determined whether there is an underlying medically determinable physical or mental impairment, *i.e.*, an impairment or impairments that can be shown by medically acceptable clinical or laboratory diagnostic techniques that could reasonably be expected to produce Plaintiff's symptoms. Second, the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of symptoms are not substantiated by objective medical evidence, the ALJ considered other evidence in the record to determine if Plaintiff's symptoms limit the ability to do work-related activities. (AR 30).

The ALJ then discussed his findings regarding Plaintiff's physical and mental impairments, considering Plaintiff's hearing testimony, medical evidence, treatment history, activities of daily living, and medical opinion evidence. (AR 31-39). In forms completed prior to the hearing that Plaintiff alleged limitations from a knee problem, depression, and anxiety, asserting he experienced pain, panic attacks, anger, frustration, fatigue, and difficulty sleeping, lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, interacting with others, concentrating, and handling stress and changes in routine. In April 2019, Plaintiff claimed he needed to rest for 20 to 30 minutes after walking two blocks. Plaintiff attested he did not spend time with others or go out often. Plaintiff did not report difficulty completing tasks, remembering, understanding, following instructions, or getting along with others. (AR 31).

The ALJ considered the April 2019 third party function report completed by Ms. Leticia Sanchez (Plaintiff's sister).  (AR 31).  Specifically, Ms. Sanchez noted Plaintiff was limited by knee pain and anxiety with difficulty sleeping, lifting, squatting, bending, standing, walking, kneeling, and concentrating.  Ms. Sanchez stated Plaintiff could not be around people and that he did not go out. `Ms. Sanchez noted that Plaintiff did not have difficulty sitting, climbing stairs, completing tasks, remembering, understanding, following instructions, getting along with others, or handling changes in routine.  The ALJ noted that as of October 2019, Ms. Sanchez indicated Plaintiff's anxiety and pain were increasing, reporting he appeared sad, depressed, frustrated, stressed, and sometimes cried.  (AR 31).

The ALJ recounted Plaintiff's hearing testimony.  (AR 31). Specifically, Plaintiff alleged limitations from knee problems, obesity, anxiety, and depression with symptoms including pain, stiffness, sadness, crying spells, isolative behavior, frustration, nervousness, and panic attacks with chest pain, with panic attacks occurring twice a week and worse pain with standing or sitting too long.   Plaintiff claimed he has never worked for more than a few days due to knee pain, and that he would not be able to climb stairs without pain. The ALJ noted that Plaintiff testified he is 5 feet and 10 inches tall and weighs 381 pounds.  Plaintiff attested he has gained weight due to his right knee problems. Plaintiff separately alleged he has difficulty concentrating, including when reading. Plaintiff stated he talks with his mother but indicated he otherwise does not have family or friends with whom he talks.  Plaintiff estimated he is able to stand in one spot for a minute before needing to sit down due to pain, sit for no more than 10 to 20 minutes, and lift a gallon of milk.  (AR 31).

At the hearing, Plaintiff attested that his knee surgery had been scheduled but was postponed due to the COVID-19 pandemic.  (AR 31).  Plaintiff reported taking medication and in April 2019, Plaintiff claimed medication caused drowsiness.  Plaintiff indicated he was not taking medication specifically for pain.  In September 2019, Plaintiff indicated he took ibuprofen for pain, which caused dry mouth; however, he otherwise denied having side effects.   In October 2019, Ms. Sanchez, on behalf of Plaintiff, noted he was not having medication side effects.  Plaintiff attested his medication for pain has run out, noting pain medication also caused side effects.  Plaintiff testified he currently takes ibuprofen and indicated his medication for anxiety and depression is

1   somewhat helpful, reporting that with medication, his panic attacks have decreased from daily to

2   twice a week.  The ALJ found that Plaintiff noted he has been advised to lose weight.  Plaintiff

3   testified an assistive device to aid ambulation has not been prescribed.  (AR 31).

4        The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting

5   effects of his symptoms were inconsistent with the overall record.  (AR 32).

6        As to Plaintiff's alleged significant physical health symptoms, the ALJ found that Plaintiff

7   has some limitations from degenerative joint disease of the right knee. However, the ALJ found his

8   subjective symptomology testimony is inconsistent because the objective medical evidence,

9   including diagnostic imaging studies, did not support the testimony.  The ALJ relied on a February

10  2019 x-ray imaging of the right knee that showed tricompartmental degenerative joint disease but

11  with only marginal osteophytosis and small effusion.  (*Id.* (citing Ex. 1F/64)).  The ALJ also pointed

12  to a September 2019 MRI of the right knee that demonstrated grade I to II chondromalacia of the

13  lateral compartment and a non-displaced flap tear extending from the body into the anterior horn

14  of the lateral meniscus with extrusion of the meniscus but showed Plaintiff's cruciate and collateral

15  ligaments were intact.  (*Id.* (citing Ex. 3F/98-99)).

16       Further, the ALJ noted the objective physical examination findings do not support

17  Plaintiff's testimony.  The ALJ noted some physical examination findings corroborated Plaintiff's

18  testimony, including:  Plaintiff at times reported subjective pain upon palpitation or range of motion

19  testing of the right knee; in April 2019 he had a slight limp favoring the right side; at a May 2019

20  physical therapy evaluation, Plaintiff had an antalgic gait with valgus, swelling, tension, and

21  abnormal range of motion upon examination of the knee; in August 2019, Plaintiff had reduced

22  right knee range of motion due to pain; and during an orthopedic evaluation in December 2019, he

23  had right knee valgus deformity with mild swelling.  (AR 32 (citing Ex. 1F, 3F, 5F)).

24       The ALJ noted the physical examination findings also showed neutral or positive findings:

25  Plaintiff presented with normal strength, tone, reflexes, and sensation; Plaintiff often had a normal

26  gait and presented with no acute distress; in August 2018, he had normal range of motion upon

27  examination of the musculoskeletal system; in May 2019, he reported having only mild tenderness

28  with palpation; in June 2019, during a psychological evaluation, he presented with normal motor

1  function and the ability to ambulate without assistance; and in December 2019, he had full range

2  of motion of the right knee.  (AR 32 (citing Ex. 1F, 2F, 4F, 5F)).

3          Further, the ALJ discounted Plaintiff's pain testimony in finding the record demonstrates

4  relatively conservative treatment as shown from various records: Plaintiff was prescribed ibuprofen

5  for knee pain; he participated in physical therapy in May 2019, which he claimed he stopped due

6  to pain; and in September and November 2019, he was wearing a knee brace.  (AR 32 (citing Ex.

7  1F, 3F, 4F)).  The ALJ noted the record does not demonstrate that surgery has been performed or

8  recommended, and that in December 2019, Kenny Thanh Mai, M.D., one of the Plaintiff's medical

9  sources and an orthopedic surgery specialist, noted Plaintiff was not a good surgical candidate and

10  that he should lose weight to reduce pain and prevent arthritis.  (AR 32 (citing Ex. 1F-6F)).

11          The ALJ noted that Plaintiff has been advised to lose weight and the record demonstrated

12  fluctuations of weight, but he declined referrals to or did not attend appointments with a nutritionist

13  because he was not ready to see one in October 2018 due to stress and social anxiety.  (AR 33 (Ex.

14  1F/3F)).  The ALJ noted the record does not document recent or recurrent emergency room

15  evaluations due to uncontrolled pain, nor any evidence that Plaintiff required narcotic pain

16  medication, received knee injections, or a use of or prescription for an assistive device to aid in

17  ambulation.  (*Id.* (citing Ex. 1F-6F)).

18          The ALJ considered the medical opinion evidence, namely the consultations of state agency

19  medical consultants S. Gitlin, M.D. in June 2019 (Ex. 1A, 2A) and R. Masters, M.D. in October

20  2019 (Ex. 5A, 6A).  (AR 36-37).  The ALJ found Dr. Gitlin's function-by-function assessment

21  persuasive given its consistency with the record medical evidence, physical examination findings,

22  Plaintiff's conservative physical treatment, and findings that Plaintiff consistently presented normal

23  findings related to strength, tone, reflexes, and sensation with no acute stress.  (AR 36 (citing Ex.

24  1F, 3F, 5F)).  The ALJ found mostly persuasive the assessment of Dr. Masters for the same reasons.

25  (AR 37 (citing Ex. 1F, 4F, 5F, 6F)).

26          As to Plaintiff's alleged significant mental health symptoms, the ALJ found that Plaintiff

27  has some limitations from depressive and anxiety disorders.  However, the ALJ found his subjective

28  symptomology testimony inconsistent as unsupported by the objective medical evidence.  The ALJ

noted certain factors corroborating Plaintiff's mental symptomology testimony, to wit: Plaintiff was diagnosed with major depressive disorder and an anxiety disorder, as well as other anxiety disorders including a panic disorder and social phobia; he appeared anxious, with a sad affect observed at times; in February 2019, he was frustrated and worried; however, he acknowledged he had not taken his medication that morning; in June 2019, at which time he stated he had stopped all of his medication, he appeared confused with poor insight and judgment; at a consultative evaluation, he appeared fidgety with bouncing of his leg; he had impaired attention and impaired ability to interpret proverbs; and in July 2019, he had an irritable affect.  (AR 33 (citing Ex. 1F, 2F, 3F, 4F)).  The ALJ identified portions of Plaintiff's testimony he found inconsistent with the record, specifically: the medical evidence of record does not contain evidence of suicidal ideation, homicidal ideation, or psychosis; during evaluations, he appeared alert and/or oriented, presented with no acute distress, frequently as cooperative and/or pleasant, with intact cognitive function, and had good eye contact.  The ALJ noted that during multiple evaluations, Plaintiff denied experiencing loss of interest and feeling down or depressed and at times, he presented with unremarkable findings with regard to mood and affect.  (AR 34 (citing Ex 1F, 3F)).  The ALJ noted that in July 2018, Plaintiff had good insight and judgment and in August 2018, he denied experiencing daytime fatigue.  (AR 34 (citing Ex. 1F)).

The ALJ further noted as inconsistent with Plaintiff's mental health testimony that: in June 2019, during a psychological consultative evaluation, Plaintiff presented as friendly with good grooming, appropriate attire, and normal facial expressions; he was a reliable historian and interacted appropriately with the examiner with no bizarre behavior observed; he presented with normal speech and intact intelligence; he had adequate concentration, memory, and fund of knowledge; he had unremarkable thought content with intact insight, judgment, and thought processes, as well as intact abilities with regard to abstraction and performance of calculations; and he reported having good relationships with his siblings.  (AR 34 (citing Ex. 2F)).  The ALJ noted that in July 2019, Plaintiff had clear speech with good insight and judgment and in December 2019, he indicated he did not have loss of interest or uncontrollable worry.  (AR 34 (citing Ex. 3F, 5F)).

The ALJ found Plaintiff's mental health treatment history has been quite conservative other

than the records showing Plaintiff sought emergent or urgent evaluation of anxiety with chest pain at or around April and June 2018. (AR 34 (citing Ex. 1F, 2F)). In support, the ALJ noted that: Plaintiff has been prescribed medication for depression and anxiety, which was adjusted at times; there is no indication of any inpatient treatment, intensive case management, partial hospitalizations, or hospitalizations for his mental impairments; there is no evidence of recent emergency room evaluations or urgent care visits due to symptoms of uncontrolled anxiety or depression; although Plaintiff reported at the June 2019 consultative evaluation that he attended counseling, the medical evidence of record does not document recent counseling; he frequently declined referrals to behavioral health, initially stating he was not ready although he later claimed this was due to anxiety; although the record indicates he was referred to a psychiatrist on multiple occasions, he declined or did not show up to appointments with no demonstrated treatment with a psychiatrist; he at times was not fully compliant with recommended treatment such that he stopped taking medication; and in June and July 2019, Mercedeh Deyhim, PA-C, one of Plaintiff's providers, noted she had a long talk with him regarding the need for compliance with treatment. (AR 34 (citing Ex. 1F-6F)).

Further noting Plaintiff's inconsistent mental health testimony, the ALJ found the record demonstrates Plaintiff reported improvements in mental health symptoms with treatment. The ALJ noted examples: in May 2018, Plaintiff noted he had good results from a selective serotonin reuptake inhibitor (SSRI); in August 2018, he reported improvement in anxiety with medication, noting he had no recent panic attacks or emergency room visits; in November 2018, he reported improvement following an adjustment to his medication regimen in October 2018, noting he had no panic attacks since that time; in January 2019, he stated that a medication change helped significantly; and in February 2019, he noted his current medication regimen was the best he had so far. (AR 34-35 (citing Ex. 1F)). The ALJ considered Plaintiff's allegations of medication side effects in the assessed RFC, noting that: Plaintiff reported side effects including nausea, abdominal pain, anxiety, panic, and drowsiness, which the record indicated his medication regimen was changed in response thereto; the record showed he appeared alert and oriented with intact cognitive function during evaluations; the medical record does not document ongoing or frequent reports of

1    nausea or abdominal pain due to medication; he had cooperative behavior and good eye contact

2    with no acute distress during an evaluation in June 2019 despite complaints of increased anxiety

3    with medication; and despite reporting an increase in panic attacks with Paxil in July 2019, he

4    presented with no acute distress, with the record not documenting urgent care or emergency room

5    visits at or around that time due to panic attacks.  (AR 35 (citing Ex. 1F-6F)).  The ALJ therefore

6    found that greater limitations due to medication side effects was not supported.  (AR 35).

7        The ALJ then considered the medical opinion evidence, namely the consultations of state

8    agency psychological consultants Tim Schumacher, Ph.D. in July 2019 (Ex. 1A, 2A) and J.

9    Collado, M.D. in October 2019 (Ex. 5A, 6A).  (AR 37).  The ALJ found the assessments of both

10   state consultants, which provided the same limitations, partially persuasive given their assessed

11   limitations of Plaintiff's interacting with others as moderately limited was not consistent with the

12   overall medical record.  The ALJ also considered the June 2019 observations of consultative

13   psychologist G. Seward, Psy.D.  (AR 38 (citing Ex. 2F)).  The ALJ noted that Dr. Seward had the

14   opportunity to examine Plaintiff on one occasion but nonetheless found his assessment not

15   consistent with the overall medical record and found it not persuasive.  The ALJ reasoned that

16   Plaintiff presented some positive findings, however, he: frequently had unremarkable findings with

17   regard to orientation, alertness, cognitive function, behavior, attitude, and eye contact, with good

18   insight and judgment observed on multiple occasions; no evidence of  suicidal ideation, homicidal

19   ideation, or psychosis; and the assessment was not consistent with the longitudinal treatment record

20   such that the record shows relatively conservative treatment.  (AR 38 (citing Ex. 1F-6F)).

21       As to Plaintiff's alleged issues with functioning and activities of daily living, the ALJ found

22   that: in April 2019, Plaintiff indicated fatigue occasionally affected his ability to prepare meals and

23   that anxiety and pain affected his ability to perform hobbies; he did not drive, but reported this was

24   due to the lack of a driver's license; he claimed he did not spend time with others and that he did

25   not go out often; at the hearing, Plaintiff asserted he has pain when driving more than 20 minutes

26   and when taking a shower.  (AR 35 (citing Ex. 5F, 6F)).  The ALJ noted the third-party report of

27   Ms. Sanchez described similar limitations, including in October 2019, that Plaintiff could not

28   perform chores or sports.  (AR 35 (citing Ex. 10F)).  The ALJ noted the following inconsistencies:

1   in November 2018, Plaintiff indicated he was walking daily for exercise; in April 2019, he denied

2   having problems performing personal care tasks; he reported he prepared meals daily; he stated he

3   washed laundry and mowed the lawn; he noted he could go out alone, shop in stores, and handle

4   money; he reported he watched television and played videogames.  (AR 35 (citing Ex. 6E)).  The

5   ALJ also found·certain of Ms. Sanchez's statements inconsistent with Plaintiff's testimony: she

6   stated Plaintiff could perform personal care tasks without difficulty or need for reminders and he

7   prepared simple meals daily, indicating there had been no change in his cooking habits since the

8   onset of his conditions; that he washed laundry, cleaned his room, watched television, and played

9   videogames; and that he could go out alone, shop in stores, and handle money.  (AR 35 (citing Ex.

10   5E, 6E)).  The ALJ further noted that: in June 2019, Plaintiff stated he was able to manage funds

11   and make change, noting he did not need help preparing meals; he reported he was independent in

12   perform basic activities of daily living; and at the hearing, Plaintiff indicated he has a driver's

13   license and that he can drive short distances.  (AR 35 (citing Ex. 2F)).

14        The ALJ concluded that Plaintiff's residual functional capacity (RFC) assessment is

15   supported by the overall record.  (AR 38).  The ALJ recognized that Plaintiff's impairments

16   imposed some limitations on his functioning and stated that the RFC was adjusted to accommodate

17   those limitations.  The ALJ stated that due to degenerative joint disease of the right knee and obesity

18   with subjective complaints of pain and objective findings including a valgus deformity, reduced

19   range of motion, and occasional abnormalities of gait, he accorded exertional, postural, and

20   environmental restrictions.  (*Id.* (citing EX. 1F; 3F; 5F)).  He also accorded restrictions limiting

21   Plaintiff to understanding and remembering simple instructions and carrying out simple tasks with

22   brief reminders to follow through on workplace assignment changes based on Plaintiff's alleged

23   symptoms, treatment record, and examination findings, including abnormalities of mood and affect

24   with poor insight and judgment, impaired attention and ability to interpret proverbs, and fidgeting

25   observed in June 2018.  (*Id.* (citing Ex. 1F-6F)).

26        At step four, the ALJ found that Plaintiff has no past relevant work.  At step five, based on

27   the testimony of the vocational expert, and considering Plaintiff's age, education, work experience,

28   and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in the national economy

1   such as an inspector, bench assembler, and machine tender.  Accordingly, the ALJ concluded that

2   a finding of "not disabled" is therefore appropriate under the five-step sequential evaluation

3   required by C.F.R. § 404.1520(a).  (AR 40).

4       After the Appeals Council denied review, Plaintiff initiated this action, filing the instant

5   motion for remand on April 25, 2022.  (Doc. 17).  Defendant filed an opposition on July 12, 2022.

6   (Doc. 21).  Plaintiff filed a reply on July 28, 2022.  (Doc. 21).

7       **B.    Medical Record and Hearing Testimony**

8       The relevant hearing testimony and medical record were reviewed by the Court and will be

9   referenced below as necessary to this Court's decision.

10  **II.    LEGAL STANDARD**

11      A district court's review of a final decision of the Commissioner of Social Security is

12  governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

13  Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is

14  based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence"

15  means "relevant evidence that a reasonable mind might accept as adequate to support a

16  conclusion."  (*Id*. at 1159) (quotation and citation omitted).  Stated differently, substantial evidence

17  equates to "more than a mere scintilla[,] but less than a preponderance."  (*Id*.) (quotation and

18  citation omitted).  "It is such relevant evidence as a reasonable mind might accept as adequate to

19  support a conclusion." *Healy v. Astrue*, 379 Fed. Appx. 643, 645 (9th Cir. 2010).  In determining

20  whether the standard has been satisfied, a reviewing court must consider the entire record as a whole

21  rather than searching for supporting evidence in isolation.  (*Id.*).

22      The court will review only the reasons provided by the ALJ in the disability determination

23  and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205,

24  42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its

25  judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the

26  evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d

27  1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account

28  of an error that is harmless.  (*Id.*).  An error is harmless where it is "inconsequential to the [ALJ's]

13

1    ultimate nondisability determination." (*Id*). (quotation and citation omitted).  The party appealing

2    the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

3    *Sanders*, 556 U.S. 396, 409-10 (2009).

4        A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits

5    within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any

6    substantial gainful activity by reason of any medically determinable physical or mental impairment

7    which can be expected to result in death or which has lasted or can be expected to last for a

8    continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the

9    claimant's impairment must be "of such severity that he is not only unable to do his previous

10    work[,] but cannot, considering his age, education, and work experience, engage in any other kind

11    of substantial gainful work which exists in the national economy." 42 U.S.C. §

12    1382c(a)(3)(B).

13        The Commissioner has established a five-step sequential analysis to determine whether a

14    claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

15    Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant

16    is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not

17    disabled.  20 C.F.R. § 416.920(b).

18        If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

19    two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R.

20    § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments

21    which significantly limits [his or her] physical or mental ability to do basic work activities," the

22    analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not

23    satisfy this severity threshold, however, the Commissioner must find that the claimant is not

24    disabled.  (*Id.*).

25        At step three, the Commissioner compares the claimant's impairment to impairments

26    recognized by the Commissioner to be so severe as to preclude a person from engaging in

27    substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more

28    severe than one of the enumerated impairments, the Commissioner must find the claimant disabled

1    and award benefits.  20 C.F.R. § 416.920(d).

2        If the severity of the claimant's impairment does not meet or exceed the severity of the

3    enumerated impairments, the Commissioner must pause to assess the claimant's "residual

4    functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

5    ability to perform physical and mental work activities on a sustained basis despite his or her

6    limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

7        At step four, the Commissioner considers whether, in view of the claimant's RFC, the

8    claimant is capable of performing work that he or she has performed in the past (past relevant

9    work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work,

10   the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the

11   claimant is incapable of performing such work, the analysis proceeds to step five.

12       At step five, the Commissioner considers whether, in view of the claimant's RFC, the

13   claimant is capable of performing other work in the national economy.  20 C.F.R. §

14   416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

15   factors such as the claimant's age, education, and past work experience.  (*Id.*).  If the claimant is

16   capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20

17   C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis

18   concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  (*Id.*).

19       The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

20   180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

21   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

22   work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

23   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

24   **III.    ISSUES AND ANALYSIS**

25       Plaintiff raises two issues in his motion to vacate and remand: (1) the ALJ erred by finding

26   the opinion from Dr. Seward "not persuasive" without proper consideration of the supportability

27   and consistency of the opinion with the record; and (2) the ALJ failed to include work-related

28   limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed

1   to offer any reason for discounting Plaintiff's symptoms.  (Doc. 17 at 1).

2   **A.    Whether the ALJ Erred in Finding the Opinion from Dr. Seward Not**
3   **Persuasive Without Proper Consideration of the Supportability and**
4   **Consistency of the Opinion with the Record**

5   *1:    Governing Authority*

6   Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the

7   agency's newest regulations governing an ALJ's evaluation of medical opinions.  20 C.F.R. §

8   416.920c.  Under the new regulations, the Commissioner does "not defer or give any specific

9   evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative

10  medical findings (s), including those from [a claimant's] medical sources."  20 C.F.R. §§

11  404.1520c(a), 416.920c(a).  Thus, the regulations require an ALJ to apply the same factors to all

12  medical sources when considering medical opinions and no longer mandate particularized

13  procedures that the ALJ must follow in considering opinions from treating sources.  *See* 20 C.F.R.

14  § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or

15  prior administrative medical finding from one medical source individually.");  *Trevizo v. Berryhill*,

16  871 F.3d 664, 675 (9th Cir. 2017).

17  Instead, "[w]hen a medical source provides one or more medical opinions or prior

18  administrative medical findings, [the ALJ] will consider those medical opinions or prior

19  administrative medical findings from that medical source together using" the following factors: (1)

20  supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other

21  factors that "tend to support or contradict a medical opinion or prior administrative medical

22  finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)-(5).  The most important factors to be applied in

23  evaluating the persuasiveness of medical opinions and prior administrative medical findings are

24  supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability

25  factor, the regulation provides that the "more relevant the objective medical evidence and

26  supporting explanations presented by a medical source are to support his or her medical opinion(s),

27  the more persuasive the medical opinions ... will be."  20 C.F.R. § 404.1520c(c)(1).  In other words,

28  "[s]upportability means the extent to which a medical source supports the medical opinion by

1    explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92

2    (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more

3    consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical

4    sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. §

5    404.1520c(c)(2).

6        The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a

7    prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The

8    ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors],"

9    except when deciding among differing yet equally persuasive opinions or findings on the same

10   issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he]

11   considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, the Court

12   must determine whether the ALJ adequately explained how he considered the supportability and

13   consistency factors relative to medical opinions and whether the reasons were free from legal error

14   and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

15           2.    *Dr. Seward's Opinion*

16       On June 27, 2019, Plaintiff attended a comprehensive mental status evaluation with G.

17   Seward, Psy.D. ("Dr. Seward"), a consultative psychologist. (AR 494-97). Dr. Seward observed

18   Plaintiff presented in a friendly manner and interacted appropriately throughout the evaluation.

19   (AR 494). Plaintiff endorsed mental health symptoms of depression and anxiety with the inability

20   to focus, frustration, needing "some fresh air all the time[,]" and having trouble with "a lot of people

21   being in the same room." (*Id.*). Plaintiff reported taking two trips to the hospital for a "panic attack

22   (chest pains)." (*Id.*). Plaintiff reported experiencing these psychiatric symptoms for over a year,

23   which "occur on a daily basis" at a severity "in the moderate to severe range" and have gotten

24   "worse and more persistent." (*Id.*). Plaintiff reported having attended counseling and having been

25   prescribed psychiatric medications, including a current prescription of Paxil. (AR 495). Plaintiff

26   reported that he was feeling a "little anxious" at that time and he faced limitations with daily living

27   resulting from "psychiatric, emotional, and/or cognitive issues" that have "ma[de] it hard to focus

28   or be around others." (AR 494-95). Plaintiff reported no history of suicide attempts, prior

17

1    psychiatric hospitalizations, self-harm, or being a danger to others, and denied current suicidal or

2    homicidal ideation. (AR 495). Plaintiff reported current psychological stressors of financial

3    hardship and mental health status. (*Id.*).

4        On examination, Plaintiff: appeared casually dressed with good grooming; cooperative

5    attitude; good eye contact; normal speech; alert; fully oriented; and intelligence intact. (AR 495-

6    96). Plaintiff's motor activity was fidgety with frequent bouncing of his leg, had impaired attention,

7    and had adequate concentration, knowledge, and memory. (AR 496). Plaintiff had intact

8    abstraction, calculation, judgment, and insight, but his ability to interpret provers was impaired.

9    (*Id.*). Plaintiff's mood and affect were anxious and had unremarkable thought content. (*Id.*). Dr.

10    Seward rendered diagnostic impressions of "[m]ajor depressive disorder, recurrent, unspecified"

11    and "[a]nxiety disorder, unspecified[.]" (*Id.*).

12        Dr. Seward opined Plaintiff is mildly limited in his ability to understand, remember, and

13    perform simple written and oral instructions and is moderately limited as to complex instructions.

14    (AR 497). Dr. Seward opined Plaintiff is markedly limited in his ability to do the following:

15    maintain regular attendance in the workplace; perform work activities on a consistent basis;

16    perform work activities without special or additional supervision; complete a normal workday or

17    workweek without interruptions from his psychiatric condition; interact with coworkers and with

18    the public, and deal with the usual stress encountered in a competitive work environment. (*Id.*).

19    Dr. Seward explained Plaintiff's limitations are due to the cognitive and functional deficits

20    associated with his mood disorder. (*Id.*).

21        Dr. Seward opined it appears Plaintiff's mental health symptoms may be chronic in nature

22    and "may not abate on its own within a one-year period" given the current diagnosis and past mental

23    health involvement. (*Id.*). Dr. Seward further opined Plaintiff "may benefit from starting therapy

24    and continuing psychiatric medication to address and manage current mental health symptoms."

25    (*Id.*).

26        *3.    Parties' Contentions*

27        Plaintiff argues that the ALJ erred in finding the opinion of Dr. Seward not persuasive where

28    the ALJ failed to acknowledge the opinion is supported by Dr. Seward's positive examination

18

1    findings and is consistent with the record as a whole. (Doc. 17 at 9). First, Plaintiff asserts the

2    ALJ's finding is unsupported by substantial evidence because the ALJ discussed only the evidence

3    consistent with his conclusion and failed to discuss or reconcile conflicting findings when

4    evaluating the supportability of Dr. Seward's opinion. (*Id.*). Second, Plaintiff contends the ALJ

5    failed to show the opinion was inconsistent when the ALJ identified normal findings to "cancel

6    out" findings of Plaintiff's mental abnormalities in the record. (*Id.*). Plaintiff further argues the

7    ALJ erred in finding the opinion inconsistent when he erroneously found Plaintiff's mental health

8    care was conservative. (*Id.*).

9        Defendant asserts that the ALJ reasonably found Dr. Seward's opinion not persuasive

10   because the opinion is "not supported by his own examination findings" and conflicted with other

11   evidence in the record. (Doc. 20 at 6, 7). Defendant contends the ALJ pointed out that Plaintiff

12   had a number of "unremarkable findings" throughout the record. (*Id.* at 7). Defendant contends

13   the ALJ found the opinion inconsistent because the record "shows *relatively* conservative

14   treatment." (*Id.*). Defendant contends that even if the ALJ mischaracterized Plaintiff's mental

15   health treatment as conservative, the Court should affirm because the ALJ "provided other valid

16   reasons." (*Id.* at 8).

17       In reply, Plaintiff asserts that the ALJ failed to meet the substantial evidence threshold

18   because he discussed only the findings consistent with his conclusion and "wholly ignore[d] the

19   abnormal findings[,]" inaccurately suggested the examination findings were "entirely normal[,]"

20   and otherwise failed to discuss or reconcile the conflicting findings. (Doc. 21 at 2).

21           *4.    Analysis*

22       The ALJ found Dr. Seward's assessment was "not supported by his own examination

23   findings" because the assessment observed a number of positive findings, including "appropriate

24   attire, good grooming, a friendly manner, a cooperative attitude, [and] good eye contact[.]" (AR

25   38). However, as Plaintiff correctly argues, the ALJ failed to articulate how or why any of these

26   positive findings did not support Dr. Seward's assessed limitations or otherwise explain the

27   relevancy of those findings to the objective medical evidence. In a single-sentence observation,

28   the ALJ concludes that certain positive findings by Dr. Seward undermine his assessment of marked

1    limitations in four functional areas, but the ALJ does not explain how Dr. Seward's other adverse

2    findings fail to support his underlying opinions and conclusions. *See Woods*, 32 F.4th at 791-92;

3    *see also Reddick*, 157 F.3d at 725 (ALJ must "set forth his own interpretations and explain why

4    they, rather than the doctors, are correct."). The ALJ therefore failed to consider the supportability

5    of Dr. Seward's assessment in finding his opinion not persuasive.

6        Regarding consistency, the ALJ concluded that Dr. Seward's assessment is not consistent

7    with the overall medical evidence by noting that though Plaintiff presented some positive findings,

8    those findings were inconsistent with Plaintiff's "unremarkable findings with regard to orientation,

9    alertness, cognitive function, behavior, attitude, and eye contact, with good insight and judgment

10   observed on multiple occasions." (AR 38). This does not constitute substantial evidence of any

11   material inconsistency between the positive findings and the neutral findings of Dr. Seward's

12   assessment. *See Johnson v. Berryhill*, No. C17-5623-MAT, 2018 WL 3008879, at *4 (W.D. Wash.

13   June 15, 2018) ("[T]he existence of other normal findings does not negate Dr. Wingate's

14   examination."); *William B. v. Saul*, 2:19-CV-00261-JTR, 2020 WL 4318755, at *3 (E.D. Wash.

15   July 27, 2020) ("Simply because Plaintiff did well on portions of the mental status exam does not

16   negate the other abnormal findings, as well as Dr. Islam-Zwart's professional assessments.").

17       Additionally, the ALJ failed to show how or why any of Dr. Seward's findings are

18   inconsistent with any other medical source in the record, such as the other psychological medical

19   opinions he found persuasive. *Woods*, 32 F.4th at 792. The ALJ did not acknowledge the

20   consistency of Dr. Seward's findings with that of Dr. Schumacher or Dr. Collado, including similar

21   findings that Plaintiff had a mild limitation in understanding, remembering, or applying

22   information, appeared cooperative and/or friendly, had good eye contact, and other positive

23   findings. The Court also notes the ALJ discounted Dr. Schumacher and Dr. Collado's finding that

24   Plaintiff had a moderate limitation in interacting with others for the same reason the ALJ discounted

25   Dr. Seward's finding of a marked limitation as to same—because those assessments were not

26   consistent with "the overall record." Moreover, the ALJ simply states Dr. Seward's assessment

27   showed "[t]here is no evidence of suicidal ideation, homicidal ideation, or psychosis" without

28   pointing to how that finding is inconsistent with the record. Indeed, that finding is consistent with

1    the ALJ's account of Plaintiff's mental health treatment history, symptomology testimony, and

2    overall record.

3    　　　Without explanation, the ALJ concludes Dr. Seward's assessment is inconsistent with

4    Plaintiff's "longitudinal treatment record such that the record shows relatively conservative

5    treatment[.]"  (AR 38).  The ALJ noted earlier he considered Plaintiff's mental health treatment

6    "quite conservative" because Plaintiff's records lacked evidence of certain treatment methods or

7    more serious care, as there was no indication of any inpatient treatment, intensive case

8    management, partial hospitalizations, or hospitalizations for Plaintiff's mental impairments, nor

9    any evidence of emergency room evaluations or urgent care visits due to his alleged symptoms.

10   (AR 34).  However, the ALJ found that Plaintiff indeed sought emergent or urgent evaluation of

11   anxiety with chest pain at or around April and June 2018, and he acknowledged that Plaintiff has

12   been prescribed medication for depression and social anxiety that "was adjusted at times."  (AR

13   34).  Indeed, Plaintiff has been prescribed medication for social anxiety, depression, anxiety, and

14   panic disorder and at times had adjusted (*i.e.*, increased) doses over time and other medication

15   management practices.   (AR 35 (citing Ex. 1F/17, 34, 43 (medication doses), 44 (regimen

16   summary), 46 (prescribed combinations of Buspirone and Citalopram for anxiety disorder and

17   Celexa and Buspar for panic disorder), 53 (SSRI and hydroxyzine for panic disorder)).

18   　　　The Court acknowledges some courts have found under certain circumstances that

19   medications like those prescribed to Plaintiff here constitute conservative treatment.  *See Garcia v.*

20   *Comm'r of Soc. Sec.*, No. 1:21-cv-00068-SAB, 2022 WL 2110709, at *8 (E.D. Cal. June 10, 2022)

21   (citing cases).  Other courts have found treatment with such medications was not conservative.  *See*

22   *Mason v. Colvin,* No. 1:12-cv-00584-GSA**,** 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013)

23   (treatment with anti-depressants and anti-psychotic medications was not conservative); *accord*

24   *Wilson v. Berryhill*, No. CV 17-06967-AFM, 2018 WL 6321629, at *4 (C.D. Cal. July 9, 2018)

25   ("As Plaintiff correctly points out, courts have recognized that treatment involving several of these

26   medications [including Paxil and Buspirone] is not 'conservative.'"); *Carden v. Colvin*, No. CV

27   13-3856-E**,** 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014) (the prescription of medications such

28   as Zoloft and Seroquel is generally recognized as not conservative); *Odisian v. Colvin*, No. CV 12-

21

9521-SP, 2013 WL 5272996, at *8 (C.D. Cal. Sept. 8, 2013) (treatment with psychotropic medications and sessions with a psychologist was not conservative).  Here, the ALJ failed to sufficiently explain the conservative treatment finding as to Plaintiff's use of these medications, thus rendering the ALJ's finding unsupported by substantial record evidence.  *See Wheeler v. Berryhill*, No. 3:16-CV-01623-AA, 2017 WL 3478483, at *4 (D. Or. Aug. 11, 2017) (finding ALJ's characterization of plaintiff's course of treatment as "routine and conservative" not supported by substantial evidence because "it is not possible to evaluate whether those treatments conflict with plaintiff's allegations about the severity of his symptoms because the ALJ never specified which symptom statements conflict with plaintiff's course of treatment."); *Maria B. v. Saul*, No. EDCV 20-192-KK, 2020 WL 11884826, at *7 (C.D. Cal. Oct. 30, 2020) ("the ALJ failed to provide any evidence or discussion in support of her characterization of Plaintiff's mental health treatment as conservative."); *Emme J. C. v. Saul*, No. EDCV 19-02186 PVC, 2021 WL 3730165, at *5 (C.D. Cal. Mar. 23, 2021) (same).  Thus, the ALJ's unsupported finding that Plaintiff's mental health treatment was, in fact, conservative, undermines his conclusion that Dr. Seward's opinion is unpersuasive given its purported lack of consistency.

Separately, the Court notes that two of the relevant factors—relationship with claimant and specialization—favor Dr. Seward's opinion as he is the only psychological consultant that personally examined Plaintiff among the opinions the ALJ considered, and the ALJ acknowledges Dr. Seward is "a specialist in the field of psychology." (AR 38); *Boeche v. Kijakazi*, No. 23CV918-RBM (BLM), 2024 WL 3430576, at *7 (S.D. Cal. July 15, 2024); *see Veronica L. v. Comm'r of Soc. Sec.*, No. 1:23-cv-00107-JR, 2024 WL 399049, at n.2 (D. Or., Feb. 2, 2024) ("[a]s the Ninth Circuit recently explained, [u]nder the revised regulations ... a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion.").  Although not required (*see* 20 C.F.R. § 404.1520c(b)(2)-(3)), the ALJ's acknowledgement of but failure to reconcile Dr. Seward's specialization further undermines the foundation of his assessment of persuasiveness of Dr. Seward's opinion.

Because the ALJ failed to adequately address how Dr. Seward's opinion lacked supportability or consistency, or provide any other reason to discount the opinion, he improperly

1  found the opinion not persuasive.  Therefore, the ALJ's finding that Dr. Seward's opinion was not

2  persuasive is not supported by substantial evidence.

3      **B.**    **Whether the ALJ Failed to Include Work-Related Limitations in the RFC**

4      **Consistent with the Nature and Intensity of Plaintiff's Limitations and**

5      **Improperly Rejected Plaintiff's Subjective Symptom Testimony**

6      *1.*    *Governing Authority*

7      As discussed above, a claimant's RFC is "the most [the claimant] can still do despite [his

8  or her] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC assessment is an

9  administrative finding based on all relevant evidence in the record, not just medical evidence.

10  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In determining the RFC, the ALJ must

11  consider all limitations, severe and non-severe, that are credible and supported by substantial

12  evidence in the record.  (*Id.*).  However, an ALJ's RFC findings need only be consistent with

13  relevant assessed limitations and not identical to them.  *See Turner v. Comm'r of Soc. Sec*., 613

14  F.3d 1217, 1222-23 (9th Cir. 2010) ("Although the ALJ rejected any implication in Dr. Koogler's

15  evaluation that Turner was disabled, he did incorporate Dr. Koogler's observations into his residual

16  functional capacity determination. … These limitations were entirely consistent with Dr. Koogler's

17  limitation.").  Ultimately, a claimant's RFC is a matter for the ALJ to determine.  *Vertigan v. Halter*,

18  260 F.3d 1044, 1049 (9th Cir. 2001).

19      Plaintiff argues the ALJ erred in assessing her RFC because he failed to set forth any clear

20  and convincing reasons for discounting Plaintiff's symptoms.  (Doc. 17 at 10).  The ALJ is

21  responsible for determining credibility,[5] resolving conflicts in medical testimony, and resolving

22  ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A claimant's statements of

23  pain or other symptoms are not conclusive evidence of a physical or mental impairment or

24  disability.  42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's

25

---

26      [5] SSR 16-3p applies to disability applications heard by the agency on or after March 28,

27  2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character but an endeavor to

28  "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3.

1    statements of symptoms alone are not enough to establish the existence of a physical or mental

2    impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is

3    not required to believe every allegation of disabling pain or other non-exertional impairment.")

4    (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1104 (9th Cir.

5    2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).  Determining whether a

6    claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage

7    in a two-step analysis.  *Molina*, 674 F.3d at 1112.  The ALJ must first determine if "the claimant

8    has presented objective medical evidence of an underlying impairment which could reasonably be

9    expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028,

10    1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant

11    to show that his impairment could be expected to cause the severity of the symptoms that are

12    alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen v. Chater*,

13    80 F.3d 1273, 1282 (9th Cir. 1996).

14        If the first step is met and there is no evidence of malingering, "the ALJ must provide

15    'specific, clear and convincing reasons for' rejecting the claimant's testimony." *Treichler v.*

16    *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281). *See*

17    *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

18    credibility finding must be based on "clear and convincing reasons").  The ALJ must make findings

19    that support this conclusion, and the findings must be sufficiently specific to allow a reviewing

20    court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

21    arbitrarily discredit the claimant's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

22        The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

23    claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

24    *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

25    2023), F&R adopted, 2023 WL 5109769 (E.D. Cal. Aug. 8, 2023); *see Record v. Kijakazi*, No.

26    1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's

27    decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court

28    will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th

1    Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the ALJ's

2    rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494

3    (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

4         The ALJ may consider numerous factors in weighing a claimant's credibility, including "(1)

5    ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior

6    inconsistent statements concerning the symptoms, and other testimony by the claimant that appears

7    less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

8    prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284.

9    In evaluating the credibility of symptom testimony, the ALJ must also consider the factors

10   identified in SSR 16-3P. *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). Accord

11   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These factors include:

12   
13        (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or
          other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The
14        type, dosage, effectiveness, and side effects of any medication an individual takes
          or has taken to alleviate pain or other symptoms; (5) Treatment, other than
15        medication, an individual receives or has received for relief of pain or other
          symptoms; (6) Any measures other than treatment an individual uses or has used to
16        relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15
          to 20 minutes every hour, or sleeping on a board); and (7) Any other factors
17        concerning an individual's functional limitations and restrictions due to pain or
          other symptoms.
18   
19   SSR 16-3P, 2017 WL 5180304, at *7.  *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

20   supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533

21   F.3d at 1039 (citations and internal quotation marks omitted).

22        The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

23   demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th

24   Cir. 2014) (*quoting Moore v. Comm'r of Soc. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A

25   finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing

26   court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did

27   not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d

28   487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan,* 260 F.3d at 1049. *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient.'" *Id.* (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

However, the medical evidence "is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court of Appeals has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

### 2.     Parties' Contentions

Plaintiff argues the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to consider the impact of all of Plaintiff's subjective symptomology testimony. (Doc. 17 at 12). Plaintiff argues the ALJ improperly discounted his pain testimony in relying on objective findings and improperly finding his treatment for knee pain was conservative. (*Id.* at 11). Plaintiff argues the ALJ improperly discounted his mental health allegations by erroneously classifying his mental health treatment as conservative and failing to show any of Plaintiff's improvements to his mental health symptoms "was sustained as opposed to temporary." (*Id.* at 12). Finally, Plaintiff argues the ALJ erroneously found his daily living activities inconsistent with his alleged limitations. (*Id.*).

Defendant argues the ALJ reasonably found Plaintiff's symptomology testimony unreliable and substantial evidence supports his assessment. (Doc. 20 at 8). Defendant contends the ALJ

1  discounted Plaintiff's testimony because: (1) the testimony is contradicted by the objective medical

2  evidence; (2) Plaintiff's pain treatment was relatively conservative; (3) Plaintiff's mental health

3  treatment history is lacking; (4) Plaintiff was noncompliant with treatment; (5) Plaintiff experienced

4  improvements in mental health symptoms with treatment; (6) Plaintiff's activities of daily living

5  were inconsistent with his alleged limitations; and (7) Plaintiff's statements were inconsistent as to

6  functioning.  (*Id.* at 9-14).

7        In reply, Plaintiff contends the ALJ's "summary of cherry-picked benign findings is not

8  sufficient to discredit" his testimony because "symptoms cannot be discounted merely because they

9  are unsupported by objective medical evidence."  (Doc. 21 at 4).  Plaintiff contends the ALJ's

10  reliance upon isolated examples that are not consistent with the overall record falls short of

11  establishing a "clear and convincing" reason to discount his testimony.  (*Id.*).

12              *3.      Analysis*

13        The ALJ found that Plaintiff's severe medical impairments—degenerative joint disease of

14  the right knee, obesity, depression, and anxiety—significantly limit him from performing basic

15  work activities.  (AR 27 ¶ 3).  The ALJ summarized Plaintiff's subjective symptom testimony from

16  the hearing:

17        [Plaintiff] alleged limitations from knee problems, obesity, anxiety, and depression
         with symptoms including pain, stiffness, sadness, crying spells, isolative behavior,
18        frustration, nervousness, and panic attacks with chest pain, with panic attacks
         occurring twice a week and worse pain with standing or sitting too long.   He
19        claimed he has never worked for more than a few days due to knee pain.   He
         reported he would not be able to climb stairs without pain. [He] testified he is 5 feet
20        and 10 inches tall, noting he weighs 381 pounds.  He reported he has gained weight
         due to his right knee problems. [He] alleged he has difficulty concentrating,
21        including when reading.  He stated he talks with his mother, but indicated he
         otherwise does not have family or friends with whom he talks. [He] estimated he is
22        able to stand in one spot for a minute before needing to sit down due to pain, sit for
         no more than 10 to 20 minutes, and lift a gallon of milk.
23

24

25  (AR 31).  After finding that Plaintiff's impairments could reasonably be expected to cause his

26  alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity,

27  persistence, and limiting effects of his symptoms are not entirely consistent with the record.  (AR

28  31-32); *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely include this [boilerplate]

1    statement in their written findings as an introduction ... before [identifying] what parts of the

2    claimant's testimony were not credible and why.").

3        Here, in discounting Plaintiff's testimony, the ALJ relied on the following: (1) Plaintiff's

4    statements were inconsistent with the objective medical evidence, conservative treatment, and

5    treatment history; and (2) Plaintiff's daily activities purportedly were inconsistent with his alleged

6    limitations.  (AR 32-35).

7              (a)    <u>Plaintiff's inconsistent statements as to Plaintiff's conservative pain</u>

8                    <u>treatment are a clear and convincing reason to reject Plaintiff's</u>

9                    <u>symptomology testimony.</u>

10       As to Plaintiff's alleged knee pain, the ALJ recited record findings, including "objective

11   physical examination findings" to show they "do not support the level of limitation alleged[.]"  (AR

12   32) (Plaintiff "presented with normal strength, tone, reflexes, and sensation"; "often had a normal

13   gait"; "[h]e presented with no acute distress"; "had normal range of motion upon examination").

14   However, the ALJ also cited to records that substantiate Plaintiff's alleged limitations, including

15   that Plaintiff "reported subjective pain upon palpitation or range of motion testing of the right knee"

16   and to various records describing Plaintiff's limitations to the knee.  (AR 32) ("he had a slight limp

17   favoring the right side"; "[he] had an atalgic gait with valgus, swelling, tension, an abnormal range

18   of motion upon examination of the knee[.]").  "The fact that a claimant's testimony is not fully

19   corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason

20   for rejecting it."  *Vertigan,* 260 F.3d at 1049.

21       Defendant next argues that the ALJ properly discounted Plaintiff's testimony because it is

22   "contradicted by medical evidence."  (Doc. 20 at 9).  That Plaintiff's allegations of pain in "standing

23   or sitting too long" or "climbing stairs" or could not work for "more than a few days due to knee

24   pain" are somehow contradicted because records show he generally appeared "with no acute

25   distress" at routine follow-ups or "often had normal gait" and "ambulated without assistance" is

26   unfounded.  Indeed, courts have rejected an ALJ's reliance on cherry-picked statements in the

27   medical record of acute distress while ignoring statements in those same notes describing chronic

28   pain. *Hernandez v. Comm's of Soc. Sec.*, No. 1-22-cv-00188-CDB, 2024 WL 3470855, at *5 (E.D.

Cal. July 18, 2024); *accord Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. Apr. 21, 2020) ("the generic chart note of 'no acute distress' is not a clear and convincing reason to discount Plaintiff's symptom testimony"); *Barbara P. v. Kijakazi*, No. 2:20-cv-00326-MKD, 2021 WL 4295745, at *7 (E.D. Wash. Sep. 21, 2021) ("In repeatedly citing a brief, generic chart note as one of the few reasons to reject Ms. Witte's opinions, the ALJ mischaracterized the record. The longitudinal treatment record shows more mixed results, and by not analyzing relevant findings within the same treatment notes, the ALJ's characterization of the record is not supported by substantial evidence."); *Troy A. H. v. Comm's of Soc. Sec.*, No. 6:20-cv-01228-YY, 2022 WL 336846, at *5 (D. Or. Feb. 4, 2022) ("[T]he ALJ selectively relied upon notes indicating 'no acute distress' while ignoring plaintiff's subjective complaints of pain and gastrointestinal distress accompanied by objective exam findings of abdominal tenderness within the same exam."). The ALJ failed to show or explain why these general findings contradict Plaintiff's pain testimony. Thus, the ALJ failed to offer a clear and convincing reason to discount Plaintiff's credibility on this basis.

The ALJ next discounts Plaintiff's pain testimony because the "record demonstrates relatively conservative treatment." (AR 32) ("[T]he record does not demonstrate that surgery has been performed or recommended";"[t]he record does not document recent or recurrent emergency room evaluations due to uncontrolled pain"; "[t]here is no evidence that [Plaintiff] required narcotic pain medication" or "received knee injections" or the "use of or a prescription for an assistive device to aid ambulation[.]"). The Court agrees. Though the record shows Plaintiff briefly participated in physical therapy and wore a knee brace in September and November 2019, Plaintiff's treatment of his knee pain consisted primarily of conservative modalities. Plaintiff was not recommended surgery given he "was not a good surgical candidate" and instead, he was advised to "lose weight to reduce pain and prevent arthritis." (AR 32). There is no evidence Plaintiff received injections for his knee pain or use of narcotic pain medication. Thus, the ALJ's finding that Plaintiff's testimony was inconsistent with his conservative treatment is a clear and convincing reason to reject that testimony. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("[E]vidence of conservative treatment is sufficient

1   to discount a claimant's testimony regarding [the] severity of an impairment."); *Shepard v. Colvin*,

2   No. 1:14-cv-1166-SMS, 2015 WL 9490094, at *7 (E.D. Cal. Dec. 30, 2015) ("[p]rior cases in the

3   Ninth Circuit have found that treatment was conservative when the claimant's pain was adequately

4   treated with over-the-counter medication and other minimal treatment[.]"); *accord  Teresa Marie*

5   *C. Kijakazi*, 2023 3564939, at *5 (S.D. Cal. Mar. 28, 2023) ("The record here establishes Plaintiff's

6   back and knee pain was managed with medication and a single administration of bilateral knee

7   injections … supporting the ALJ's finding that Plaintiff's treatment was conservative."); *Walter v.*

8   *Astrue*, No. 09-CV-1569-AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly

9   discredited claimant's allegations of low back and knee pain based on conservative treatment

10   consisting of Vicodin, physical therapy, and a steroid injection).

11   ///

12

13          (b)     Plaintiff's purported inconsistent statements with respect to

14                  Plaintiff's mental health treatment and history are not a clear and

15                  convincing reason to reject his symptomology testimony.

16          As noted above, the ALJ mischaracterized Plaintiff's mental health treatment as

17   conservative such that the ALJ improperly rejected symptomology testimony on this basis.

18          The ALJ also discredits Plaintiff's mental health symptomology testimony because he often

19   declined referrals to psychiatry or behavioral health care and there was no evidence of emergent

20   care visits due to his anxiety or depression. (AR 35.)  However, Plaintiff explained "he was not

21   ready" for this specialized psychiatric or behavioral health care due to his anxiety, and the ALJ

22   noted Plaintiff sought emergency care visits for panic attacks on two occasions.  (AR 35, 434, 444,

23   494).  Thus, the ALJ erred in discrediting Plaintiff's testimony on this basis.  *Garrison*, 759 F.3d

24   at n.24 ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of

25   poor judgment in seeking rehabilitation.") (citing *Nguyen v. Chater*, 100 F.3d 1462, 1495 (9th Cir.

26   1996)).

27          The ALJ separately discredits Plaintiff's symptomology testimony because the record

28   demonstrates he reported improvements in mental health symptoms with treatment, including with

30

medication and adjustments to his medication regimen. (AR 34-35). However, the fact that Plaintiff obtained some relief from mental health symptoms through use of prescription medications is not a proper ground upon which the ALJ may discount Plaintiff's credibility or reject his symptomology testimony. The Social Security Administration regulations provide that in evaluating the intensity and persistence of symptoms and determining the extent they limit a claimant's capacity to work, a relevant factor to consider is "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv). Thus, the use of prescription medications to manage but not eliminate mental symptoms should be considered by the ALJ as a limiting factor in the residual functional capacity. Defendant cites no authority that the use of prescription psychotropic medications to regulate but not eradicate a mental health disorder or its symptoms should be used to discount a claimant's symptoms. *Cf. Donald R. F. v. Saul*, No. 5:18-00158 ADS, 2019 WL 7938245, at *5 (C.D. Cal. Sept. 12, 2019) (rejecting similar "reported improvement with medication" argument as basis for discounting symptomology testimony); *see Attmore v. Colvin*, 827 F. 3d 872, 878 (9th Cir. 2016) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her[.]")).

(c)    Plaintiff's activities of daily living (ADL) do not provide a clear and convincing reason to reject his symptomology testimony.

An ALJ may reject a claimant's subjective symptom testimony if it is inconsistent with the claimant's activities of daily living. *Tommasetti*, 533 F.3d at 1039. There are two grounds on which an ALJ may use a claimant's daily activities to question a claimant's credibility as to her subjective symptoms: (1) when daily activities demonstrate the claimant has transferable work skills, and (2) when daily activities contradict the claimant's testimony as to the degree of functional limitation. *Orn*, 495 F.3d at 639. However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722; *see Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to

1    a work environment where it might be impossible to rest periodically or take medication.").  "The

2    mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping,

3    driving a car, or limited walking for exercise, does not in any way detract from [their] credibility[.]"

4    *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (quoting *Vertigan*, 260 F.3d at 1050).

5    Regarding mental health issues, "[c]ycles of improvement and debilitating symptoms are a common

6    occurrence," and an ALJ errs by "pick[ing] out a few isolated instances of improvement over a

7    period of months or years and [] treat[ing] them as a basis for concluding a claimant is capable of

8    working."  *Garrison*, 759 F.3d at 1017.

9          Here, Defendant does not argue whether Plaintiff's activities demonstrate he has

10    transferrable work skills or an ability to sustain work.  Instead, Defendant argues Plaintiff's alleged

11    limitations in doing certain activities is inconsistent with Plaintiff's other identified activities.  The

12    ALJ noted as inconsistent Plaintiff's testimony that "fatigue occasionally affected his ability" in

13    preparing meals by noting Ms. Sanchez's report that "he prepared simple meals daily, indicating

14    there had been no change in his cooking habits since the onset of his conditions."  (AR 35).

15    However, the mere fact that Plaintiff was able to carry on with preparing meals despite occasional

16    fatigue does not detract from the credibility of his testimony.  *Webb*, 433 F.3d at 688.  Moreover,

17    Defendant fails to show how Plaintiff taking showers is inconsistent with his testimony that he has

18    pain in doing so.  Nor is the Court persuaded it is inconsistent that Plaintiff could shop in stores,

19    handle money, and drive while claiming he could not concentrate due to anxiety.  The ALJ therefore

20    failed to adequately explain how Plaintiff's described activities of daily living conflict with his

21    alleged limitations or demonstrate his ability to work.  *See, e.g., Wilson v. Comm'r of Soc. Sec.*

22    *Admin.*, 303 Fed. Appx. 565, 566 (9th Cir. 2008) (finding a plaintiff's occasional driving does not

23    render him able to work); *Vertigan*, 260 F.3d at 1050 (finding "only a scintilla of evidence in the

24    record to support the ALJ's finding that [plaintiff] lacked credibility about her pain and physical

25    limitations" where the ALJ relied on Plaintiff's ability to go "grocery shopping with assistance,

26    walk approximately an hour in the malls, get together with her friends, play cards, swim, watch

27    television, ... read.... [and participate in] physical therapy for six months and exercise[ ] at home.");

28    *Costa v. Berryhill*, 700 Fed. Appx. 651, 653 (9th Cir. 2017) ("The ability to accomplish daily tasks

1    irregularly does not necessarily equate with an ability to work.").  Thus, the Court cannot ascertain

2    which of Plaintiff's symptom testimony the ALJ properly rejected based on the ADL evidence, or

3    why.  *See, e.g., Isa A. v. Saul*, No. 18cv01728-W-MSB, 2019 WL 3554969, at *6 (S.D. Cal. Aug.

4    5, 2019) ("Because the ALJ did not identify any actual inconsistency in his opinion or describe his

5    reasoning, the Court cannot ascertain which of Plaintiff's symptom and pain testimony the ALJ

6    rejected based on the ADL evidence.") (citing *inter alia Holohan*, 246 F.3d at 1208.  For these

7    reasons, the ALJ did not identify a specific, clear, and convincing reason for discrediting Plaintiff's

8    symptom testimony when he did not explain how those ADLs either contradicted Plaintiff's

9    testimony or equaled transferable work skills.

10                                  *       *       *       *       *

11        In sum, the ALJ failed to properly consider the supportability and consistency of Dr.

12   Seward's medical opinion before finding it not persuasive such that remand is warranted to address

13   this legal error.  Further, the ALJ failed to include work-related limitations in the RFC consistent

14   with the nature and intensity of Plaintiff's alleged mental health limitations in improperly rejecting

15   his subjective symptomology testimony.  While an ALJ's error may be harmless where he provides

16   valid reasons for disbelieving a claimant's testimony in addition to invalid reasons (*Molina*, 674

17   F.3d at 1115 (citing cases)), here, the ALJ provided no valid reasons for rejecting Plaintiff's mental

18   symptomology testimony.  Accordingly, the error is not harmless.

19        **C.    Request for Remand**

20        Plaintiff seeks to remand.  (Doc. 17 at 13).  Defendant contends that should the Court find

21   the ALJ's findings are not supported by substantial evidence and are reversible legal error, the

22   Court should remand for further proceedings.  (Doc. 20 at 15).  "The decision whether to remand

23   for further proceedings or simply to award benefits is within the discretion of court."  *Trevizo*, 871

24   F.3d at 682 (*quoting Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).  "Remand for further

25   administrative proceedings is appropriate if enhancement of the record would be useful."  *Benecke*

26   *v. Barnhart*, 379 F.3d 587, 593 (emphasis omitted) (9th Cir. 2004).

27        In this case, the ALJ erred by failing to properly consider the supportability and consistency

28   of Dr. Seward's opinion before finding it unpersuasive, failing to offer clear and convincing reasons

1    to reject Plaintiff's mental health symptomology testimony, and failing to sufficiently explain how

2    Plaintiff's activities of daily living undermine his alleged limitations.  Given these errors, the Court

3    concludes that remand for further proceedings is warranted because additional administrative

4    proceedings may remedy the deficiencies in the ALJ's decision noted herein.

5    **IV.    CONCLUSION AND ORDER**

6          For the reasons set for above, the Court finds the ALJ erred in evaluating opinions in the

7    record and failed to apply the proper legal standards.  Accordingly, IT IS HEREBY ORDERED

8    that:

9          1.    Plaintiff's motion to vacate and remand (Doc. 17) is **GRANTED**;

10         2.    The decision of the ALJ (Doc. 12) is **REVERSED**;

11         3.    This matter is **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) for

12               further proceedings consistent with this decision; and

13         4.    The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff Angel

14               Cabral and against Defendant Commissioner of Social Security.

15   IT IS SO ORDERED.

16   Dated:   __**March 12, 2025**__                _____

17                                                 UNITED STATES MAGISTRATE JUDGE